UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

RUMIA TANYALETE AMBROSE-BURBANK,

                 Debtor.
_____/

STUART A. GOLD, TRUSTEE,

                 Plaintiff,

v.

NOVYCE HARPER,

                 Defendant.
_____/

Case No. 15-54057-tjt
Chapter 7
Judge Thomas J. Tucker

Adv. Pro. No. 15-05446-tjt

**OPINION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.  Introduction and background**

    This adversary proceeding presents competing claims to ownership of a vehicle titled in

Michigan, a 2010 Dodge Charger (the "Vehicle").  The sole owner of the Vehicle, according to

the certificate of title, is the Chapter 7 bankruptcy debtor, Rumia Tanyalete Ambrose-Burbank

(the "Debtor").  The Debtor has not claimed any exemption for the Vehicle.  Based on these

facts, the Plaintiff Chapter 7 Trustee claims that the Vehicle is the exclusive property of the

bankruptcy estate.

    But the Defendant, Novyce Harper (the "Defendant"), who is the Debtor's cousin, claims

to be the sole "equitable" owner of the Vehicle, so that the bankruptcy estate owns only the "bare

legal title" to the Vehicle.  Defendant claims, and the Debtor agrees, that although the Debtor

bought the Vehicle from a dealer, and financed the purchase, solely in the Debtor's own name,

this was actually done only to help Defendant buy the Vehicle.  And it is undisputed that the Debtor gave Defendant sole possession of the Vehicle shortly after the Debtor bought it, and that Defendant made 100% of the payments for the Vehicle (the down payment and all loan payments).

The Trustee filed a three-count complaint against Defendant.  Count I seeks a declaratory judgment that the Vehicle is property of the bankruptcy estate, subject to immediate turnover to the Trustee.  Count II seeks avoidance of any transfer of the Vehicle from the Debtor to Defendant under 11 U.S.C. §§ 544(a)(1), 544(a)(2), 544(a)(3) and 550(a). Count III seeks avoidance of any transfer of the Vehicle from the Debtor to Defendant as a fraudulent transfer, under 11 U.S.C. §§ 544(b), 548 and 550(a).

The Trustee and Defendant each moved for summary judgment.  In his motion, the Trustee seeks summary judgment on Counts I and II of his complaint.  The Trustee has abandoned Count III, and seeks to voluntarily dismiss that count.[1]  Defendant seeks summary judgment on the Trustee's remaining counts.  The Court held a hearing on the motions, and took them under advisement.

For the reasons stated below, the Court concludes, based on the undisputed facts, that the sole owner of the Vehicle is the Debtor's bankruptcy estate.  Defendant has no ownership interest — legal or equitable — in the Vehicle.  The Court will grant summary judgment for the Trustee, and deny Defendant's summary judgment motion.

## II.  Facts

---

[1]  *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. (Docket # 45) at 1; Hearing Transcript (Docket # 56, "Tr.") at 2-3.

The following facts are not in dispute.

On March 31, 2010, the Debtor purchased the Vehicle for $25,026, from a dealer named Sterling Heights Dodge, Inc.[2] The Debtor applied for and obtained a loan in her own name to finance the purchase. The Debtor made a loan agreement by entering a Retail Installment Sale Contract with Ally Bank a/k/a GMAC.[3] But it was Defendant who paid to the dealer an initial $100 deposit on March 11, 2010.[4] And Defendant supplied the money for the Debtor to pay the dealer an additional $1,000 deposit on April 2, 2010.[5]

The Dealer and the Debtor applied for title to the Vehicle in Debtor's name, alone, on March 31, 2010. On the application form, there were two boxes where the applicant was to list "Complete Names and Addresses of All Owners or Lessees." One box listed the Debtor's name and address, alone. The other box was left blank, indicating that there were no owners other than the Debtor.[6] The Michigan Secretary of State then issued a certificate of title, listing only the Debtor as owner of the Vehicle.[7] The Debtor initially insured the Vehicle listing herself and her husband as drivers.[8] But almost immediately, the Debtor discontinued her insurance and

---

[2] *See* Docket # 20, Ex. A. Unless otherwise noted, citations to exhibits in this opinion ("Ex. __) are to exhibits attached to the Trustee's summary judgment motion, Docket # 20.

[3] *Id.*

[4] Ex. C at 1.

[5] *Id.* at 2; Aff. of Def. (Docket # 42, Defendant's Ex. A, "Def. Aff.") at ¶ 4; Tr. at 20.

[6] Ex. D.

[7] *See* Ex. G.

[8] Ex. E.

Defendant began insuring the Vehicle through her insurance.[9]  Also immediately after purchasing the Vehicle, the Debtor gave possession of the Vehicle to Defendant.[10]  Defendant made every monthly payment due on the Vehicle loan through the last payment on March 2, 2015, when the Vehicle loan was paid off.[11]  And Defendant says that she has "maintained all repairs for the [Vehicle] and paid for all the work done on the [Vehicle]."  This statement is rather vague, however; Defendant does not specify what repairs or work have been done on the Vehicle or how much she has paid.[12]

Defendant asserts that her intention and the Debtor's intention was for the Debtor to purchase the Vehicle for Defendant, and that the Debtor was only involved to help Defendant, who could not obtain credit to purchase the Vehicle on her own.[13]  But no one — not the dealer, the Debtor, or Defendant — ever took any of the actions required to transfer an ownership interest in the Vehicle to Defendant.  Neither the dealer nor the Debtor ever assigned or delivered the certificate of title to Defendant.  Nor did the dealer or the Debtor, or Defendant, ever apply to the Michigan Secretary of State to issue a certificate of title listing Defendant as the owner (or as a co-owner with Debtor) of the Vehicle.  And at all relevant times, the Debtor has been the only owner listed on the title.

---

[9]  Ex. H; Def. Aff. at ¶ 6.

[10]  Def. Aff. at ¶ 8.

[11]  *Id.* at ¶ 5.

[12]  *Id.* at ¶ 7.

[13]  *Id.* at ¶¶ 2-3.

4

A little over six months after the Vehicle loan was paid off, on September 24, 2015, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. On November 24, 2015, the case was converted to chapter 7, and Stuart A. Gold was appointed the Chapter 7 Trustee.

On October 22, 2015, the Debtor filed her Schedules. On Schedule B, she listed only one vehicle, a Mercedes A-6 owned jointly with her husband.[14] On December 17, 2015, the Debtor filed an amended Schedule A/B[15] in which, for the first time, she listed the Vehicle.[16] In answer to the question "Who has an interest in the property?" the Debtor checked the box for "Debtor 1 only." However, in the comments section, the Debtor stated: "Debtor holds bare legal title only. Debtor's cousin has made all payments and paid for all maintenance on the vehicle and is the true equitable owner of the vehicle."[17] The Debtor did not amend her Schedule C to claim any exemption in the Vehicle.

**III. Jurisdiction**

This Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). Plaintiff's claims in this adversary proceeding are core proceedings, under 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(E), 157(b)(2)(H), and 157(b)(2)(O).

---

[14] Schedule B, Item # 25, filed in Case No. 15-54057 at Docket # 20.

[15] Effective December 1, 2015, the Official Bankruptcy Forms were substantially revised. One of the changes was to combine previous Official Form B6A - Schedule A "Real Property" and previous Official Form B6B - Schedule B "Personal Property" into one combined Official Form 106A/B – Schedule A/B "Property."

[16] Schedule A/B, Item # 3.2, filed in Case No. 15-54057 at Docket # 63.

[17] *Id.*

In addition, this proceeding falls within the definition of a proceeding "arising under title 11" and of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b). Matters falling within either of these categories in § 1334(b) are deemed to be core proceedings. *See Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009). This is a proceeding "arising under title 11" because it is "created or determined by a statutory provision of title 11," *see id.*, namely Bankruptcy Code §§ 541, 542, 544, 548, and 550. And this is a proceeding "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *See Allard v. Coenen*, 419 B.R. at 27.

In their joint report under Fed. R. Civ. P. 26(f) filed early in this case, the parties agreed that this adversary proceeding is a core proceeding.[18] And in addition, the parties have consented to the Bankruptcy Court entering a final judgment or final order in the adversary proceeding under 28 U.S.C. § 157(c)(2), to the extent any claims are non-core.[19] *See generally Wellness Int'l Nework, Ltd. v. Sharif*, 135 S. Ct. 1932, 1948-49 (2015).

## IV. Discussion

### A.  Summary judgment standards

As this Court has stated previously, in *McCallum v. Pixley* (*In re Pixley*), 456 B.R. 770, 774-75 (Bankr. E.D. Mich. 2011):

> Fed.R.Civ.P. 56(a), applicable to bankruptcy adversary proceedings under Fed.R.Bankr.P. 7056, provides that a motion for summary judgment "shall" be granted "if the movant shows that

---

[18] Report of Parties' Rule 26(f) Conference (Docket # 8) at 3, ¶ 3(f).

[19] *See id.* at 3, ¶ 3(g).

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149-50 (6th Cir. 1995), the court elaborated:

> The moving party has the initial burden of proving that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. To meet this burden, the moving party may rely on any of the evidentiary sources listed in Rule 56(c) or may merely rely upon the failure of the nonmoving party to produce any evidence which would create a genuine dispute for the [trier of fact]. Essentially, a motion for summary judgment is a means by which to challenge the opposing party to 'put up or shut up' on a critical issue.

> If the moving party satisfies its burden, then the burden of going forward shifts to the nonmoving party to produce evidence that results in a conflict of material fact to be resolved by [the trier of fact]. In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party. However, if the evidence is insufficient to reasonably support a . . . verdict in favor of the nonmoving party, the motion for summary judgment will be granted. Thus, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff.

> . . .

> Finally, the Sixth Circuit has concluded that, in the "new era" of summary judgments that has evolved from the teachings of the Supreme Court in *Anderson* [*v. Liberty Lobby, Inc.,* 477 U.S. 242

7

(1986)], *Celotex* [*Corp. v. Catrett*, 477 U.S. 317 (1986)] and *Matsushita* [*Electric Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 (1986)], trial courts have been afforded considerably more discretion in evaluating the weight of the nonmoving party's evidence. The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the nonmoving party, the motion should be granted.

*Id.* (internal quotation marks and citations omitted). In determining whether the moving party has met its burden, a court must "believe the evidence of the nonmovant, and draw all justifiable inferences in favor of the nonmovant." *Ingram v. City of Columbus*, 185 F.3d 579, 586 (6th Cir.1999)(relying on *Russo v. City of Cincinnati*, 953 F.2d 1036, 1041-42 (6th Cir.1992)).

**B. Compliance with the Michigan Vehicle Code is required in order to transfer an ownership interest in a vehicle in Michigan.**

In bankruptcy cases, property interests generally are determined by state law. *See Butner v. United States,* 440 U.S. 48, 55 (1979); *accord French v. Frey* (*In re Bergman*)*,* 467 F.3d 536, 538 (6th Cir. 2006) (citing *Butner* ) ("Unless a federal interest is at issue, property rights are defined by state law."). In this case, the relevant state law is that of Michigan, since (1) the Vehicle is titled under Michigan law; (2) the Debtor and the Defendant reside in Michigan; and (3) all relevant events occurred in Michigan. Thus, the parties have correctly assumed that Michigan law determines what ownership rights the competing claimants have in the Vehicle.

The Michigan Vehicle Code, Mich. Comp. Laws Ann. §§ 257.1, *et. seq.* (the "MVC"), is a comprehensive statutory scheme governing almost every aspect of motor vehicle use and ownership in the State of Michigan. As with automobiles generally in Michigan, the Vehicle in

8

this case is subject to Chapter II of the MVC, which is codified at Mich. Comp. Laws Ann. §§ 257.201 through 257.259. Among other things, Chapter II of the MVC subjects motor vehicles to certificate of title and registration requirements. *See, e.g.*, Mich. Comp. Laws Ann. §§ 257.215, 257.216, 257.217, 257.33, and 257.79.

Chapter II of the MVC specifies what must be done in order to transfer an ownership interest in a vehicle. Section 257.233 addresses the situation where "the owner of a registered vehicle transfers, or assigns the title **or interest** in the vehicle." *See* Mich. Comp. Laws Ann. §§ 257.233(1), 257.233(9) (emphasis added). Section 257.333(8) provides what the owner of a vehicle must do in order to transfer ownership of a vehicle to another:

> (8) **The owner shall indorse on the certificate of title as required by the secretary of state an assignment of the title** with warranty of title in the form printed on the certificate with a statement of all security interests in the vehicle or in accessories on the vehicle **and deliver or cause the certificate to be mailed or delivered to the purchaser or transferee at the time of the delivery to the purchaser or transferee of the vehicle**. The certificate shall show the payment or satisfaction of any security interest as shown on the original title. However, as provided under section 238, the secretary of state is not required to issue a title to the owner of a vehicle if the title is subject to a security interest.

Mich. Comp. Laws Ann. § 257.233(8) (emphasis added).

Similar provisions exist in § 257.235(1), which apply to the sale of a vehicle by a dealer:

> (1) . . . Upon transferring title or interest to another person that is not a dealer, the dealer shall complete an assignment and warranty of title upon the certificate of title, salvage certificate of title, or dealer reassignment of title form and make an application for registration and a new title as provided in [Mich. Comp. Laws Ann. § 257.217].

Mich. Comp. Laws Ann. § 257.235(1).

9

Section 257.217(1), in turn, provides that "[a]n owner of a vehicle that is subject to registration under this act shall apply to the secretary of state, upon an appropriate form furnished by the secretary of state, for the registration of the vehicle and issuance of a certificate of title for the vehicle." Mich. Comp. Laws Ann. § 257.217(1). Section 257.239 provides that "[i]t is a misdemeanor for a person to fail or neglect to properly endorse and deliver a certificate of title to a transferee or owner lawfully entitled thereto." Mich. Comp. Law. § 257.239.

Finally, § 257.233(9) applies to all persons transferring an ownership interest in a motor vehicle, including dealers, and states when the transfer is effective:

> (9) Upon the delivery of a motor vehicle and the transfer, sale or assignment of the title or interest in a motor vehicle by a person, including a dealer, ***the effective date of the transfer of title or interest in the vehicle is the date of signature on either the application for title or the assignment of the certificate of title by the purchaser, transferee, or assignee.***

Mich. Comp. Laws Ann. § 257.233(9) (emphasis added).

Michigan courts long have held that compliance with the MVC is the exclusive means of transferring ownership of vehicles in this state. In *Bayer v. Jackson City Bank & Trust Co.*, 55 N.W.2d 746 (Mich. 1952), the Michigan Supreme Court stated that "'[i]t is apparent from the language of the [statute] that the legislature sought to cover every transaction involving the transfer of a motor vehicle from the owner to another, as well as transfers by operation of law.'" *Id.* at 750-51 (quoting *Taylor v. Burdick*, 30 N.W.2d 418, 421 (Mich. 1948)); *see also Dodson v. Imperial Motors, Inc.*, 295 F.2d 609, 612 (6th Cir. 1961) (collecting Michigan cases) ("The Supreme Court of [Michigan], however, has consistently held that compliance with the quoted statute ([the predecessor to § 257.233]) is essential to the transfer of ownership.").

10

As the Michigan Court of Appeals has explained: "[t]he mandates of the Michigan Vehicle Code must be followed and our courts have been adamant in their refusal to sanction anything less than strict compliance." *Messer v. Averill*, 183 N.W.2d 802, 804 (Mich. Ct. App. 1970). A purported transfer of a motor vehicle which is not done in compliance with the MVC is void. *Bayer*, 55 N.W.2d at 749-50; *Taylor*, 30 N.W.2d at 421; *Michigan Mut. Auto. Ins. Co. v. Reddig*, 341 N.W.2d 847, 849 (Mich. Ct. App. 1983) ("[A] sale of a motor vehicle which did not include a transfer of the certificate of title as required by the statute [is] void."); *Dodson*, 295 F.2d at 612-13 (citations omitted) ("[T]he Michigan court finds legislative intent that transactions failing to comply [with the statute] shall be void"); *Whitcraft v. Wolfe*, 384 N.W.2d 400, 404-05 (Mich. Ct. App. 1985) ("Failure to comply with the statutory requirements relating to endorsement and delivery of the certificate of title renders the transaction void."); *Nashville Eagle, Inc. v. Ford Motor Credit Co. (In re Superior Ground Support, Inc.)*, 140 B.R. 878, 882 (Bankr. W.D. Mich. 1992) (citations omitted) ("Any sale accomplished in violation of the Michigan [V]ehicle [C]ode's requirements on the transfer of title is void.").

**C. Based on Michigan law, the bankruptcy estate owns the Vehicle, and Defendant has no ownership interest.**

In order for Defendant to have acquired any ownership interest in the Vehicle, she must have acquired it from someone — in this case from either the car dealership or the Debtor. The Court concludes that under the undisputed facts of this case, only the Debtor acquired ownership of the Vehicle; Defendant never acquired any ownership interest in the Vehicle, from either the dealer or from Debtor. The undisputed facts in this case show that on March 31, 2010, the dealer and the Debtor applied for a certificate of title for the Vehicle in the Debtor's name only. Under

11

Mich. Comp. Laws Ann. § 257.233(9), quoted above, this is the effective date of the transfer of title and ownership from the car dealership to the Debtor. At that time, the Debtor became the sole owner of the Vehicle under Michigan law. And the certificate of title issued for the Vehicle listed only the Debtor as owner.

It is also undisputed that at no time did the Debtor indorse an assignment of the title to Defendant on the certificate of title, or deliver the certificate of title to Defendant as a transferee, both of which were required by Mich. Comp. Laws Ann. § 257.233(8) in order to transfer the Vehicle. Therefore, there was no transfer of "title or [an] interest in the vehicle" from the Debtor to Defendant. *See* Mich. Comp. Laws Ann. § 257.233(9). Nor did Defendant ever sign an application for a certificate of title for the Vehicle. Defendant took no steps to apply to the Secretary of State to register the Vehicle or obtain a certificate of title listing Defendant as the owner (or as a co-owner with Debtor), as is required by § 257.217(1).

Thus, neither the dealer, Sterling Heights Dodge, Inc., nor the Debtor ever transferred any interest in the Vehicle to Defendant. Any *intended* transfer of ownership from either the dealer or the Debtor to Defendant is void because it did not comply with the requirements of the MVC.

Therefore, as of March 31, 2010 and at all times thereafter, the Debtor was the sole owner of the Vehicle. Because the Debtor was the sole owner when she filed her bankruptcy case, the Vehicle is property of the bankruptcy estate under 11 U.S.C. § 541(a)(1). Defendant has no ownership interest in the Vehicle.

### D. Defendant's arguments are without merit.

Defendant argues that under the MVC, there can be more than one "owner" of a vehicle, and that she is the "equitable" owner of the Vehicle. She argues that the Debtor holds only bare

legal title, which has no value to the Debtor or to the Debtor's bankruptcy estate. But the Court must reject Defendant's arguments.

**1. Defendant makes no trust-based argument.**

In addressing Defendant's arguments and authorities, the Court must begin by noting what is *not* at issue in this case. Defendant does not argue that her alleged equitable interest in the Vehicle exists based on any trust law theory. In his motion for summary judgment, the Trustee anticipated that Defendant might rely on a trust theory as support for her claim to be the equitable owner of the Vehicle. The Trustee made several arguments to refute the anticipated trust theory. Specifically, the Trustee argued in detail why he contends that under Michigan law, no oral or written express trust exists with respect to the Vehicle; why no constructive trust exists; and why no resulting trust exists.[20] In response, Defendant did not contest any of these arguments by the Trustee. In short, Defendant has not made any trust-based argument, and under the circumstances, the Court concludes that Defendant has waived any such argument. Because of this, the Court will not address the Trustee's arguments as to why Defendant has no valid trust-based argument. Rather, the Court must assume for purposes of ruling on the summary judgment motions that no trust (express; constructive; or resulting) exists.

**2. Mich. Comp. Laws Ann. § 257.37, and the MVC owner's liability statute**

Defendant relies heavily on the definition of "owner" found in Mich. Comp. Laws Ann. § 257.37. But as explained below, the effect of that section's definition of "owner" is only to *impose liability* on certain persons in addition to the titled owner of a vehicle. Section 257.37

---

[20] Br. in Supp. of Pl.'s Mot. for Partial Summ. J. (Docket # 20) at 6-10.

defines the word "owner" as used in the MVC.  *See* Mich. Comp. Laws Ann. § 257.1.  Section

257.37 states:

> "Owner" means any of the following:
>
> **(a) Any person, firm, association, or corporation renting a motor vehicle or having the exclusive use thereof, under a lease or otherwise, for a period that is greater than 30 days.**
>
> (b) Except as otherwise provided in section 401a, a person who holds the legal title of a vehicle.
>
> (c) A person who has the immediate right of possession of a vehicle under an installment sale contract.

Mich. Comp. Laws Ann. § 257.37 (emphasis added).

Under subsection (b) of this definition, of course, the Debtor is an "owner" of the

Vehicle, because her name is on the title.  Defendant argues that she too is an "owner," based on

§ 257.37(a), because she has had the exclusive use of the Vehicle for more than 30 days.

Defendant also cites several Michigan cases which have held that there can be more than one

"owner" of a vehicle under the MVC, and under the similar definition of "owner" in the

Michigan No-Fault Insurance Act, Mich. Comp. Laws Ann. § 500.3101(2)(k), discussed below.

The § 257.37 definition of "owner" is important because the MVC imposes civil liability

on an "owner" for injuries caused by another person's negligent operation of a motor vehicle.

Mich. Comp. Laws Ann. § 257.401(1) imposes such liability:

> This section shall not be construed to limit the right of a person to bring a civil action for damages for injuries to either person or property resulting from a violation of this act by the owner or operator of a motor vehicle or his or her agent or servant.  **The owner of a motor vehicle is liable for an injury caused by the negligent operation of the motor vehicle whether the negligence consists of a violation of a statute of this state or the ordinary**

14

> **care standard required by common law. The owner is not
> liable unless the motor vehicle is being driven with his or her
> express or implied consent or knowledge.** It is presumed that the
> motor vehicle is being driven with the knowledge and consent of
> the owner if it is driven at the time of the injury by his or her
> spouse, father, mother, brother, sister, son, daughter, or other
> immediate member of the family.

Mich. Comp. Laws Ann. § 257.401(1) (emphasis added).

Michigan courts have explained that this provision in the MVC is intended "to place liability on the person who is ultimately in control of the vehicle under the owner's liability section." *Ringewold v. Bos*, 503 N.W.2d 716, 720 (Mich. Ct. App. 1993). And the Michigan Court of Appeals has explained that the MVC's definition of "owner" is not intended to define who has ownership rights in a vehicle:

> [t]he word 'owner' under the vehicle code obviously *is not used in
> the sense of referring to persons whose title is good against all
> others*, and under the code there may be several such owners. One
> or more persons may be *liable* as owners even though none of such
> owners possess all the normal incidents of ownership.

*Messer v. Averill*, 183 N.W.2d 802, 804 n.2 (Mich. Ct. App. 1970) (emphasis added).

Defendant cites language from *Ringewold v. Bos*, in which the court stated that "the word 'owner' [under the MVC] is not meant to restrict *liability* to a person or entity whose title is good against all others, and under the code there may be several owners." 503 N.W.2d at 719 (emphasis added). But this language further demonstrates that the definition is only meant to expand on who may be considered an "owner" *for purposes of imposing liability*. It is not helpful in determining the "owner" in the sense of the person whose title or interest in a vehicle is good against others.

### 3. The definition of "owner" in the Michigan No-Fault Insurance Act

15

Other cases cited by Defendant concern who can be considered an "owner" for certain purposes under the Michigan No-Fault Insurance Act. That act defines "owner" in a way similar to the MVC definition, but for a different purpose. As with the MVC, the No-Fault Insurance Act's use of its defined term "owner" does not define who is the owner in the sense of the person whose title or interest in a vehicle is good against others.

The definition of "owner" in the Michigan No-Fault Insurance Act is now found in Mich. Comp. Laws Ann. § 500.3101(2)(k):

> (2) As used in this chapter:
> . . .
>
> (k) "Owner" means any of the following:
>
> (I) A person renting a motor vehicle or having the use of a motor vehicle, under a lease or otherwise, for a period that is greater than 30 days.
>
> (ii) A person renting a motorcycle or having the use of a motorcycle under a lease for a period that is greater than 30 days, or otherwise for a period that is greater than 30 consecutive days. A person who borrows a motorcycle for a period that is less than 30 consecutive days with the consent of the owner is not an owner under this subparagraph.
>
> (iii) A person that holds the legal title to a motor vehicle or motorcycle, other than a person engaged in the business of leasing motor vehicles or motorcycles that is the lessor of a motor vehicle or motorcycle under a lease that provides for the use of the motor vehicle or motorcycle by the lessee for a period that is greater than 30 days.
>
> (iv) A person that has the immediate right of possession of a motor vehicle or motorcycle under an installment sale contract.

Several cases have dealt with disputes over who is an "owner" under this definition because, as one case put it, the No-Fault Insurance Act "precludes owners of uninsured vehicles from

16

receiving personal protection insurance benefits." *Twichel v. MIC Gen. Ins. Corp.*, 676 N.W.2d 616, 618 (Mich. 2004) (citing Mich. Comp. Laws Ann. § 500.3113(b)).[21]

For example, the *Twichel* case, cited by Defendant, dealt with who can be considered an "owner" under the Michigan No-Fault Insurance Act, and did not involve the determination of the true ownership of a vehicle (*i.e.*, ownership that is good against other persons). *See* 676 N.W.2d at 621. The same is true for the other No-Fault Insurance Act cases cited by Defendant — *Botsford Gen. Hosp. v. Citizens Ins. Co.*, 489 N.W.2d 137 (Mich. Ct. App. 1992); and *Harwood v. Auto-Owners Ins. Co.*, 535 N.W.2d 207 (Mich. Ct. App. 1995).

### 4. Other cases applying Michigan law

Two of the cases cited by Defendant do not involve liability under the MVC or insurance benefits under the No-Fault Insurance Act. The first case is *In re Sielaff*, 164 B.R. 560 (Bankr. W.D. Mich. 1994). In that case, the bankruptcy court had to determine whether a creditor violated the automatic stay when it repossessed a vehicle used exclusively by the bankruptcy debtor but titled solely in the name of the debtor's father. The court held that the creditor violated the automatic stay because the debtor had an equitable interest in the vehicle, which

---

[21] Mich. Comp. Laws Ann. § 500.3113(b) states:

> A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:
> . . .

> (b) The person was the owner or registrant of a motor vehicle or motorcycle involved in the accident with respect to which the security required by [Mich. Comp. Laws Ann. §§ 500.3101 or 500.31031] was not in effect.

17

became property of the bankruptcy estate and subject to the automatic stay upon commencement of the debtor's bankruptcy case.

The other case is *In re Young*, 468 B.R. 818 (Bankr. E.D. Mich. 2012). In *Young*, the issue was whether a bankruptcy debtor could claim an exemption in a vehicle which was titled solely in her co-debtor/spouse's name. The debtor, relying on *Sielaff*, argued that she had an equitable interest in the vehicle that she could exempt. The court in *Young* stated that it "agrees with *Sielaff's* holding that a debtor may have an equitable interest in the vehicle even when the debtor is not shown on the title," but ultimately held that the equitable considerations present in *Sielaff* were not present in that case. *Id.* at 825.

To the extent *Sielaff* and *Young* support Defendant's position in this case, this Court respectfully disagrees with them. As support for its decision in *Sielaff*, the bankruptcy court cited several bankruptcy court decisions recognizing an equitable interest in a motor vehicle even when the party's name was not on the title. But none of those cases were Michigan cases or interpreted Michigan law. *Sielaff*, 164 B.R. at 568 n.11.[22] *Sielaff* cited no Michigan statute or case holding that there may be an equitable owner of a vehicle under the MVC. The *Young* case, in turn, relied on the *Twichel* case and on *Sielaff*. But as noted above, *Twichel* concerned benefits under the No-Fault Insurance Act, rather than true ownership of a vehicle, and *Sielaff* is unpersuasive for the reasons stated in this opinion. Further, the court in *Young* actually ruled that the debtor did not have an equitable ownership interest in the vehicle, because there was "not

---

[22] In addition, Defendant's attorney cited another case in support of her position during oral argument, namely *Kuzy's Drug Store, Inc. v. L'Altrelli* (*In re Kuzy's Drug Store, Inc.*), No. 13–2100–CMB, 2014 Bankr. LEXIS 380 (Bankr. W.D. Pa. Jan. 27, 2014). But that case applied the law of Pennsylvania, not Michigan law.

18

enough evidence to overcome the statutory presumption that [the co-debtor], as the person shown on the certificate of title, is the owner of the [vehicle]." 468 B.R. at 825.

This Court has not found any Michigan case which recognized an equitable ownership interest in a motor vehicle.[23] Nor has Defendant cited any such case.

The court in *Sielaff* cited a Michigan case from 1939 which bears some discussion here — *Wood v. Merchants Ins. Co. of Providence*, 289 N.W. 259 (Mich. 1939). *Sielaff* described *Wood* as follows: "In this case, decided under an earlier version of the current Michigan Vehicle Code, the Michigan Supreme Court held that title alone did not conclusively determine ownership of a motor vehicle." *Sielaff*, 164 B.R. at 566 n.5. *Wood* was an insurance coverage case; it did not involve parties making competing claims to ownership of a vehicle. In *Wood*, the vehicle in question was titled jointly in two names — Archie Wood and E.J. Wood. Archie Wood was a minor, and E.J. Wood was his grandfather and guardian. Archie Wood was in a collision while driving the vehicle, and suffered damage to the vehicle. After his insurance company denied coverage for the vehicle damage, Archie Wood brought suit, through his guardian E.J. Wood (also known as Ezra J. Wood). The insurance company defended in part based on a clause in the insurance policy making the policy void "if 'the interest of the assured [in the vehicle] be or become other than unconditional and sole lawful ownership.'" 289 N.W. at 260. The insurance company argued that the assured (Archie Wood) was not the "sole" owner

---

[23] As explained in Section IV.D.1 of this opinion, in this case the Court must assume, for purposes of ruling on the summary judgment motions, that the Vehicle is not held in any sort of trust for the benefit of Defendant — including any written or oral express trust, or constructive trust, or resulting trust under Michigan law. And as to any express trust, among other things, the Vehicle is not titled in the name of a trust, or in the name of anyone as Trustee.

within the meaning of this policy language, because of E.J. Wood's name also being listed on the title as an owner.

In rejecting the insurance company's argument, the court held that notwithstanding the fact that two names appeared as owners on the title, the trial court did not err in finding that Archie Wood alone was the owner of the vehicle, at least for purposes of the insurance policy clause. The court appeared to view E.J. Wood's name on the title as being in his capacity as guardian for the minor, Archie Wood. The court noted that:

> It is manifest that a mistake was made in the registration growing out of the fact that E. J. Wood named therein is the grandfather and guardian of Archie Wood and obviously attended to the purchase of the automobile and registration. The evidence at the trial established beyond question that the auto was purchased wholly with money belonging to Archie Wood, and E. J. Wood had no interest therein.

*Id.*

Thus, *Wood* is unlike the present case. In *Wood*, the Michigan court did not hold that someone whose name was *not* on the title had any sort of ownership interest in the vehicle. Rather, the person found to be the "sole" owner for purposes of the insurance policy, Archie Wood, *was* listed on the title as an owner. (And the other person listed on the title was Archie Wood's guardian.) In this case, by contrast, Defendant's name is not listed on the Vehicle title as an owner.

The court in *Wood* also noted that the vehicle in that case had been new and had been purchased from a dealer. For this reason, the *Wood* court ruled that Michigan's "statutory provisions regulating transfer of recorded title" did not apply under the predecessor of the current MVC in effect at the time. *See id.* Whatever the relevant statutes may have been in 1939,

however, the current MVC clearly does apply to a sale by a dealer of a new vehicle, and specifies what must be done for a dealer to transfer an ownership interest in a vehicle. *See* the discussion in Section IV.B of this opinion, above (quoting Mich. Comp. Laws Ann. §§ 257.235(1), 257.233(9), 257.217(1), 257.239).

In these respects, therefore, the 1939 decision in the *Wood* case is both outdated and distinguishable from the present case.

In fairness to Defendant, the Court should note that *Wood* also cited and quoted, with apparent approval, a 1924 Missouri case, *Hirsh v. City of New York Ins. Co.*, 267 S.W. 51 (Mo. Ct. App. 1924), as holding that under Missouri law the certificate of title is not conclusive evidence on the issue of ownership of an automobile. But the extent to which this may support Defendant's position in this case matters little, because the actual holding of *Wood*, described above, is limited and distinguishable from this case.

Finally, to whatever extent the 1939 *Wood* case may arguably support Defendant's position, many more recent decisions of the Michigan Supreme Court and the Michigan Court of Appeals, as well as federal cases applying Michigan law, undercut Defendant's position. These include the cases cited in Section IV.B of this opinion, above, and the cases discussed below.

Cases interpreting the MVC persuade this Court that Michigan courts would reach the same result this Court reaches today. In order for Defendant to have obtained any ownership interest in the Vehicle, she must have acquired such interest from someone — in this case it had to be either the dealer Sterling Heights Dodge or the Debtor. But neither the dealer nor the Debtor took any of the actions required by the MVC to give Defendant any ownership interest in the Vehicle. The following cases persuade the Court that this is fatal to Defendant's claim.

In *Taylor v. Burdick*, 30 N.W.2d 418 (Mich. 1948), the plaintiff claimed ownership in her late father's vehicle, asserting that her father gave her the vehicle before he died. Her father made a written statement of the gift, and then later gave plaintiff the keys and told her the car was hers. But before he died the father did not endorse the certificate of title to plaintiff. 30 N.W. 2d at 419. The Michigan Supreme Court held that no valid gift was made, because no endorsement of the certificate of title had been made, as required by the version of the MVC then in effect. *Id.* at 421-22. The court reiterated its earlier holding from a case from 1940, that "**a person is the owner of an automobile when the title is registered in his name.** Title follows a certificate of ownership." *Id.* at 421 (quoting *Noorthoek v. Preferred Auto. Ins. Co.*, 291 N.W. 6, 8 (Mich. 1940) (emphasis added)). The court also reiterated that "an attempted sale of a motor vehicle, without complying with the statute as to endorsement of the certificate of title, was void." *Id.* at 421 (citations omitted). The court declined to discuss cases from other jurisdictions, cited by counsel, saying that it "would serve no useful purpose." *Id.* at 421-22.

In *Bayer v. Jackson City Bank & Trust Co.*, 55 N.W.2d 746 (Mich. 1952), the plaintiffs purchased a vehicle from a dealership, paid the purchase price and took possession of the vehicle. However, title was never actually transferred to the plaintiffs. Unbeknownst to the plaintiffs, at the time of the purchase, the defendant bank had possession of the dealership's certificate of title, to protect the bank's blanket lien on all inventory of the car dealer. 55 N.W.2d at 747-48. The plaintiffs ultimately filed suit against the bank, seeking turnover of the certificate of title free of any liens. The Michigan Supreme Court ruled in favor of the bank. The court held that a transaction done in violation of the MVC is void, and that "[p]laintiffs were of course charged with knowledge of the statutes pertaining to the sale of motor vehicles." *Id.* at 751. Thus, "there

22

was no valid sale of the automobile to plaintiffs, and the court of equity is without power to decree specific performance of the promise to complete the transaction by delivery of a certificate of title. Plaintiffs must necessarily be left to their legal remedy." *Id.* at 752. The legal remedy in *Bayer* was for the plaintiffs to sue the dealership for damages. *See id.* at 751 (noting that when the dealership failed to deliver the certificate of title as agreed, plaintiffs "might then have returned the car and have brought an action at once to recover what they had paid.")

As in *Taylor v. Burdick*, the Michigan Supreme Court in *Bayer* rejected contrary cases from other jurisdictions.[24]

Similarly, in *Nashville Eagle, Inc. v. Ford Motor Credit Co. (In re Superior Ground Support, Inc.*, 140 B.R. 878 (Bankr. W.D. Mich. 1992), the plaintiff purchased three de-icing machines from the debtor and paid the full purchase price before delivery. At the time the debtor filed bankruptcy, one of the de-icing machines had been delivered but two were only partly assembled. The defendant creditor had a security interest in the de-icing machines and continued to hold the certificates of origin for the two partially completed machines. The plaintiff argued that because it had paid the full purchase price, it had priority over the defendant secured creditor as a buyer in the ordinary course of business. The bankruptcy court ruled that whether the de-icing machines were vehicles under the MVC was a question of fact but that, as a matter of law,

---

[24] The Michigan Supreme Court in *Bayer* stated:

> Decisions from other jurisdictions based on the language of statutes that differ from the Michigan law are obviously not of controlling significance. The prior decisions of this Court indicate the construction that must be placed on the Michigan vehicle code. In accordance therewith the conclusion cannot be avoided that there was no valid sale of the automobile to plaintiffs . . ..

*Id.* at 752.

"the protection afforded to a buyer in the ordinary course of business of motor vehicles does not result without compliance with the Michigan vehicle code's provisions on the transfer of ownership." *Id.* at 883. In relation to the MVC, the court stated:

> A completed sale and the transfer of an ownership interest does not result under Michigan law until the time when compliance with the vehicle code is accomplished. Stated more simply, a sale does not result until the certificate of title provisions are satisfied. This is an exclusive and unavoidable requirement for the transfer of ownership. Any sale accomplished in violation of the Michigan vehicle code's requirements on the transfer of title is void.

*Id.* at 882 (internal citations omitted).

In *Wilcox, D.O. v. United States*, 888 F.2d 1111 (6th Cir. 1989), Wilcox was subject to a federal tax lien covering all of his property, including several vehicles that he owned. A person who had sold a vehicle to Wilcox asserted that the IRS could not foreclose on that vehicle, because he (the seller) rather than Wilcox was still the owner of the vehicle. Wilcox had taken possession of the vehicle, made substantial payments toward the purchase price, and paid the seller between $30,000 and $40,000 for restoration work on the vehicle, but the seller had not transferred the certificate of title. The district court refused to enjoin the tax sale, because it ruled that Wilcox was the owner. The United States Court of Appeals for the Sixth Circuit reversed, holding that:

> [u]nder Michigan law, a certificate of title remains valid unless canceled by the Secretary of State for cause or upon transfer of an interest shown on the title. . . .
>
> **Because no title had been effectively transferred to Wilcox, the sale of the [car] to Wilcox was void. . . . The payments made by Wilcox and the possession and control of the vehicle exercised by Wilcox, if any, was of no significance if the title had not been endorsed by [the seller] and delivered to Wilcox.**

24

888 F.2d at 1116, 1117 (emphasis added).

This Court concludes that under Michigan law, the Debtor was and remained the sole owner of the Vehicle, because the actions necessary to transfer an interest in the Vehicle to Defendant were not taken, as required by the MVC.

Michigan cases recognize strong policy considerations that support the Court's ruling. "The purpose of these title provisions is to guard against fraud and to discourage unlawful disposition. Possession of the certificate of title offers tangible and readily verifiable evidence of ownership consistent across the state." *Nashville Eagle, Inc.,* 140 B.R. at 882 (citations omitted).

Defendant may view the result in this case as unfair or unduly harsh. But the MVC and related Michigan case law require the result here. "A federal court in bankruptcy is not allowed to upend the property law of the state in which it sits[.]" *In re Madison Heights Grp., LLC*, 506 B.R. 734, 741 (Bankr. E.D. Mich. 2014) (quoting *First Fidelity Bank*, *N.A. v. Jason Realty, L.P.* (*In re Jason Realty, L.P.*), 59 F.3d 423, 427 (3d Cir. 1995)). And the outcome in this case is no less harsh than the outcomes for the losing parties in the *Bayer*, *Nashville Eagle*, and *Wilcox* cases described above. In those cases, a purported buyer made an agreement to purchase a vehicle, took possession of the vehicle, and paid the full purchase price to the seller for a vehicle (or, as in the *Wilcox* case, paid the seller substantial amounts of the purchase price and for restoration work on the vehicle). Yet in each of those cases, the purported buyer was held to have no ownership interest in the vehicle.

"A car buyer is charged with knowledge of the pertinent statutes." *Whitcraft v. Wolfe*, 384 N.W2d 400, 405 (Mich. Ct. App. 1985). Here, despite the fact that the Defendant says that

she and the Debtor intended Defendant to own the Vehicle, they failed to achieve such result,

because they failed to comply with the requirements of the MVC.

## V.  Conclusion

For the reasons stated in this opinion, the Court will enter a separate order:

1)  denying Defendant's summary judgment motion;

2)  granting summary judgment for the Plaintiff Trustee on Count I of the complaint (the

declaratory judgment count), *i.e.*, declaring that the Vehicle is property of the bankruptcy estate

subject to immediate turnover to the Trustee;

3)  dismissing Count II of the Plaintiff Trustee's complaint, as moot; and

4)  dismissing Count III of the Plaintiff Trustee's complaint with prejudice, based on the

Trustee's abandonment of that count and request to voluntarily dismiss that count.


**Signed on January 25, 2017**                    /s/ **Thomas J. Tucker**_____
                                                  **Thomas J. Tucker**
                                                  **United States Bankruptcy Judge**


26